**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**


**TRUSTEES OF THE PLUMBING AND
PIPEFITTING INDUSTRY HEALTH
AND WELFARE PLAN OF KANSAS,**

                                **Plaintiff,**

                                                                **CIVIL ACTION**

**v.**

                                                                **No. 10-2031-DJW**

**MILLER PAVING & CONSTRUCTION,
L.L.C., et al.,**

                                **Defendants.**


**MEMORANDUM AND ORDER**

        Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint (doc. 6).

Defendants move to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of

Civil Procedure 12(b)(6). For the reasons set forth below, the Court denies the motion.

**I.      Nature of the Matter Before the Court and Background Information**

        Plaintiff, which consists of the Trustees of the Plumbing and Pipefitting Industry Health and

Welfare Plan of Kansas (the "Plan" or the "Fund"), brings this action pursuant to Sections 502 and

515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C.

§§ 1132 and 1145. Jurisdiction is predicated on Sections 502(a), (e), and (f) of ERISA and Section

301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a).[1] Plaintiff sues Miller

---

        [1]Section 502 of ERISA sets forth the types of civil actions that may be brought by
fiduciaries, participants and beneficiaries of ERISA plans. Section 301(a) of the LMRA provides
for suits for violation of contracts between a labor organization and employer.

Paving & Construction, L.L.C. ("Miller Construction") and Miller Paving & Underground, L.L.C. ("Miller Underground") (collectively Miller Construction and Miller Underground referred to as "Defendants"). Plaintiff seeks an order directing Defendants to comply with Plaintiff's request to audit Defendants' payroll and wage records to determine the accuracy of Defendants' contributions to the Fund. Plaintiff also seeks an order directing Defendants to comply with the findings of the audit, including the payment of any delinquent contributions.

Defendants argue that Plaintiff has failed to state a claim that would entitle it to audit Defendants' payroll and wage records, and therefore urge the Court to dismiss the audit claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants argue that dismissal of the audit claims would necessarily require dismissal of the entire Complaint, because without a right to compel Defendants to submit to an audit, Plaintiff has no basis to determine that Defendants have failed to pay any contributions and Plaintiff cannot compel Defendants to pay any delinquencies.

## II.     The Complaint's Allegations

The Complaint sets forth the following factual allegations:  Defendants hired members of the Plumbers and Pipefitters Local Union 441 ("Local 441") to perform gas distribution pipeline construction work.[2] Charlie James, an agent of one or both of Defendants and acting on behalf of one or both Defendants, orally represented to agents of Local 441 that Defendants were signatories to the National Distribution Pipeline Agreement ("National Agreement").[3]

The National Agreement is an agreement between the Distribution Contractors Association and the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting

---

[2]Compl. (doc. 1)  ¶ 10.

[3]*Id.* ¶¶ 5, 11.

Industry of the United States and Canada ("United Association").[4]  Local 441 is a local union of the

United Association.[5]  The National Agreement states that it applies to all gas distribution pipeline

construction work within the United Association's jurisdiction.[6]  It provides that (1) the wage rate

paid under the Agreement will be determined by the local union; and (2) an employer, in addition

to paying wages, may be obligated by the local union to contribute to the health and welfare fund

for the benefit of the members of the local union.[7]

The National Agreement incorporates the Agreement and Declaration of Trust for the

Plumbing and Pipefitting Industry Health and Welfare Fund of Kansas (the "Trust Agreement").[8]

The National Agreement provides as follows with respect to the Trust Agreement:

> The Employer hereby agrees to adopt and be bound by the applicable Agreement and
> Declaration of Trust establishing the local union trust funds . . . the same as if it had
> itself signed the applicable Agreement and Declaration of Trust.  The Employer
> further agrees to be bound by all rules, regulations and procedures adopted by the
> trustees of the above trust funds and all actions taken by them within the scope of
> their authority.[9]

The National Agreement also provides for an audit of an employer's payroll and wage

records to determine the accuracy of contributions made to the Fund.  The National Agreement

states:

---

[4]*Id.* ¶ 5.

[5]*Id.* ¶ 10.

[6]*Id.* ¶ 6.

[7]*Id.* ¶¶ 7, 8.

[8]*Id.* ¶¶ 9, 18.

[9]*Id.* ¶ 9; *see also* Article XV, Sec. A of the National Agreement, Ex. A. to Compl. (doc. 2).

The Employer hereby acknowledges the authority of the trustees of each of the funds to which contributions are required to be paid in accordance with Article VII to have an independent accountant audit the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the funds.[10]

Section 7.1 of the Trust Agreement provides that the employer:

shall promptly make available to the Trustees on demand and for examination by the Trustees or their authorized representatives, the pertinent payroll and personnel records of his Employees and any other information . . . which the Trustees may require in connection with the administration of the Trust . . . whenever such examination is deemed necessary or advisable by the Trustees for such purposes.[11]

In addition to orally representing that Defendants were signatories to the National Agreement, Charlie James negotiated with the agents of Local 441 and "establish[ed] the applicable hourly wages and benefit contributions for covered workers in the area, pursuant to the National Agreement."[12] Mr. James and the agents of Local 441 reached an agreement and memorialized the terms of the agreement in a handwritten document ("Addendum").[13] The Addendum, which is Exhibit B to the Complaint, reveals that it was signed by Charlie James as "Managing Member Miller Paving and Construction LLC."[14] The Addendum "established . . . that certain hourly contributions would be made to the Fund, established pursuant to the . . . Trust Agreement."[15]

---

[10]Compl. (doc. 1) ¶ 9; Article XV, Sec. A of the National Agreement, Ex. A to Compl. (doc. 2).

[11]Compl. (doc. 1) ¶ 19.

[12]*Id.* ¶ 11.

[13]*Id.*

[14]Addendum, Ex. B to Compl. (doc. 2).

[15]Compl. (doc. 1) ¶ 14; *see also* Addendum, Ex. B to Compl. (doc. 2).

Although the Addendum references the "National Gas Distribution Agreement," the parties "intended the agreement to reference the National Agreement."[16]

From January 2009 to October 2009, Miller Construction submitted monthly Fringe Benefit Remittance Reports to Local 441.[17] The Fringe Benefit Remittance Reports set forth the hours worked by Local 441 members during that time period and "calculated the contributions for the Fund, totaling $19,386.65."[18] The Fringe Benefit Remittance Reports were submitted by Defendant Miller Construction; however they were submitted with benefit checks from Defendant Miller Underground.[19]

The Fund engaged a Certified Public Accountant to conduct an audit of Defendants' payroll and wage records. Defendants provided some of the documents requested for the audit, but refused to provide others.[20]

Plaintiff asserts the following legal allegations in their Complaint: Defendants have "obligat[ed] themselves to make payments to the Fund under the . . . Addendum" and by "making such payments on behalf of its employees into the Fund, the Defendants availed themselves of the

---

[16]Compl. (doc. 1) ¶ 12.

[17]*Id.* ¶ 15.

[18]*Id.* ¶ 16.

[19]*Id.* ¶¶ 15, 17.

[20]*Id.* ¶¶ 21-23.

benefits of the Fund."[21]  Defendants "became subject to the Trust Agreement through their course of conduct."[22]

Furthermore, the Complaint alleges that Plaintiff is "obligated and authorized by Article XV, Section C of the National Agreement, Section 7.1(a) of the Trust Agreement, ERISA, and the common law of trusts to initiate legal action seeking injunctive and equitable relief to enforce the terms of the Trust Agreement."[23]

Plaintiff seeks an order allowing it to audit Defendants' payroll and wage records and an order directing Defendants to comply with the audit, including the payment of any delinquent contributions that the audit may find.[24]  More specifically, Plaintiff's Complaint seeks the following relief:

> Plaintiff[] pray[s] that the Court order Defendants to comply with the legitimate and proper requests for records necessary to perform the audit of payroll and wage records for the purpose of determining the accuracy of contributions to the Fund; order Defendants to comply with the findings of the resulting audit, including payment of any delinquent contributions that are determined by the audit to have been retained by the Defendants and associated interest or liquidated damages as provided by the Trust Agreement; award . . . attorneys' fees and costs, as authorized by the Trust Agreement and ERISA; and any other legal or equitable relief which the Court deems just and proper.[25]

---

[21]*Id.* ¶ 18.

[22]*Id.*

[23]*Id.* ¶ 24.

[24]*Id.*, Wherefore Clause.

[25]*Id.*

### III.    Summary of the Parties' Arguments

#### A.    Defendants' Arguments

Defendants argue in their opening brief that Plaintiff's Complaint must be dismissed for several reasons.  First, Defendants argue that Plaintiff  "fail[s] to state a valid cause of action for an audit based on the terms and provisions in Exhibit A,"[26] i.e., the National Agreement.  Defendants point out that Plaintiff has failed to allege, and in fact cannot truthfully allege, that Defendants are signatories to the National Agreement.  Defendants contend that the alleged oral representation by Charlie James that Defendants are signatories to the National Agreement cannot bind them to that Agreement absent their actual signing of the Agreement.   If Defendants are not bound by the National Agreement, then they are also not bound by the Trust Agreement, under which Plaintiff bases the right to conduct an audit of Defendants' payroll and wage records.

Secondly, Defendants argue that Plaintiff cannot recover under the theory that Defendants have availed themselves of the benefits of the Trust Agreement by paying contributions or submitting Fringe Benefit Remittance Reports because the Tenth Circuit has never decided a case that adopts this theory.

Third, only one of the Defendants—Miller Underground—is alleged to have made monetary contributions to the Fund, so as to qualify as a contributing employer.  Thus,  under Plaintiff's alleged common law trust theory, Plaintiff has "at best," alleged a valid audit claim only against Miller Underground, and not Miller Construction.[27]

---

[26]Defs.' Mem. in Support of Mot. to Dismiss Pl.'s Compl. (doc. 7) at 3.

[27]*Id*. at 5.

Fourth, Plaintiff fails to allege that Defendants are "employers" within the meaning of the Trust Agreement or that they signed the Trust Agreement so as to make Defendants bound by the audit provision contained in the Trust Agreement. Thus, Defendants argue that Plaintiff cannot assert an audit claim based on the Trust Agreement.

Fifth, Plaintiff fails to state a claim for audit based on the Addendum, i.e., the handwritten document signed by Charlie James and the agents of Local 441. Defendants argue that the Addendum, while "clearly indecipherable," does not, on its face, authorize an audit.[28] Nor does the Addendum incorporate the Trust Agreement, which contains the audit provision.

Sixth, Defendants assert that ERISA case law does "not recognize an independent right to audit an employer pursuant to ERISA."[29]

For these various reasons, Defendants argue that Plaintiff has failed to state a cause of action that would entitle it to an audit of Defendants' records and, without an audit claim, Plaintiff has no basis to assert a claim against Defendants for any delinquencies. Thus, they request that the Court dismiss Plaintiff's Complaint in its entirety.

Finally, in a reply brief filed only by Miller Underground, Miller Underground argues that all claims against it should be dismissed because they are barred by the Kansas statute of frauds. Miller Underground supports this argument as follows: Plaintiff's Complaint never alleges that Miller Underground signed the National Agreement, the Trust Agreement, or the Addendum. The only alleged signed document is the Addendum, which Plaintiff asserts was signed by Charlie James *on behalf of Miller Construction.* (The Addendum, which is attached to the Complaint reveals that

---

[28]*Id.*

[29]*Id.*

it was signed by "Charles James, Managing Member, Miller Paving and Construction, LLC."[30]) Consequently, at most, Plaintiff has only alleged that Miller Underground paid for the debt of Miller Construction.

Under the Kansas statute of frauds, K.S.A. 33-106, no action may be brought that charges a party upon an agreement or promise to answer for the debt of another unless that agreement or promise is in writing and signed by the party to be charged with the debt. Because Plaintiff does not allege the existence of any such writing signed by Miller Underground and because the Complaint "is void of any allegations that Defendants are one in the same and/or alter egos of one another,"[31] Miller Underground asserts that any claims against it are barred by the statute of frauds and must therefore be dismissed.

### B.     Plaintiff's Arguments

Plaintiff argues that the facts alleged in the Complaint are more than sufficient to give Defendants fair notice of the claims against them. Plaintiff asserts that its audit claim arises from the fundamentals of trust law as recognized by the Supreme Court in an ERISA case, *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*[32] Moreover, Plaintiff points to two circuit court decisions that have relied on *Central States* to hold that an employer who makes contributions to a benefit fund avails itself of the benefits of the trust and is thus subject to the rules that govern the trust, including rules providing for audits, even though the employer has not signed the trust agreement. Plaintiff urges the Court to reject Defendants' argument that no valid cause of

---

[30]Addendum, Ex. B to Compl. (doc. 2).

[31]Miller Underground's Reply in Support of Mot. to Dismiss Pl.'s Compl. (doc. 11) at 3.

[32]472 U.S. 559, 572 (1985).

action has been asserted against Miller Construction because Miller Underground and not Miller Construction issued the checks and thus Miller Construction never made any monetary contributions that would qualify it as a contributing employer. According to Plaintiff, this argument of Defendants ignores the Complaint's allegations that (1) Miller Construction's Fringe Benefit Remittance Reports accompanied Miller Construction's checks, and (2) Miller Construction entered in to the Addendum, which made Miller Construction subject to the National Agreement which contained the provision expressly permitting audits.

Finally, Plaintiff argues in its sur-reply[33] that the Court should disregard Miller Underground's statute of frauds argument because that issue was never raised in Defendants' initial briefing. In the alternative, Plaintiff argues that the statute of frauds is an affirmative defense which must be proven by Miller Underground and should not be considered in deciding whether Plaintiff has pled its causes of action.

## IV.    Standard for Ruling on a Rule 12(b)(6) Motion to Dismiss

In reviewing a motion to dismiss, the starting point is Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[34] In the past, the Tenth Circuit "generally embraced a liberal construction of [this] pleading requirement," and held "a complaint containing only conclusory allegations could withstand a motion to dismiss unless its factual impossibility was

---

[33]The Court granted Plaintiff leave to file a sur-reply. *See* Order (doc. 17) granting as uncontested Plaintiff's Motion for Leave to File Sur-Reply.

[34]Fed. R. Civ. P. 8(a)(2).

apparent from the face of the pleadings . . . ."[35]  The Supreme Court, however, recently clarified this standard, and this Court must now look to two Supreme Court decisions, *Bell Atlantic Corp. v. Twombly*[36] and *Ashcroft v. Iqbal*,[37] to determine when a complaint is legally sufficient to state a claim for which relief may be granted.

In *Iqbal*, the Supreme Court held that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[38] More specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level,"[39] so that " if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."[40]  Under this standard, "a plaintiff must nudge his claims across the line from conceivable to plausible in order to survive a motion to dismiss."[41]  At the same time, however, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."[42]

---

[35]*Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008).

[36]550 U.S. 544 (2007).

[37] ___U.S. ___, 129 S.Ct. 1937 (2009).

[38]*Id.* at 1949 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

[39]*Twombly*, 550 U.S. at 555.

[40]*Robbins,* 519 F.3d at 1247.

[41]*Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007) (citing *Twombly*, 550 U.S. at 570).

[42]*Iqbal*, 129 S.Ct. at 1959 (quoting *Twombly*, 550 U.S. at 556).

The Tenth Circuit has noted that the "most difficult question in interpreting" this new standard is what the Supreme Court means by "plausibility."[43] The Tenth Circuit in *Robbins* explains:

> The [Supreme] Court states that the complaint must contain enough facts to state a claim to relief that is plausible on its face. But it reiterates the bedrock principle that a judge ruling on a motion to dismiss must accept all allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven. [According to *Twombly*,] a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely. Thus, "plausible" cannot mean "likely to be true." Rather, "plausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.[44]

In light of this case law, this Court will accept as true all well-pleaded factual allegations contained in Plaintiff's Complaint and consider whether they plausibly give rise to an entitlement to relief. In addition, in assuming the truth of all well-pleaded facts contained in Plaintiff's Complaint, the Court must draw reasonable inferences from those well-pleaded facts in the light most favorable to Plaintiff.[45] The Court must also keep in mind that "granting a motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."[46] Thus, in ruling on Defendants' Motion to Dismiss, this Court's function "is not to weigh potential evidence that the parties might present

---

[43]*Robbins,* 519 F.3d at 1247.

[44]*Id.*

[45]*Dias v. City and County of Denver,* 567 F.3d 1169, 1178 (10th Cir. 2009). This assumption, however, is inapplicable when the complaint relies on a recital of the elements of a cause of action supported by mere conclusory statements. *See Iqbal*, 129 S.Ct. at 1949.

[46]*Dia*s, 567 F.3d at 1178 (internal quotations and citations omitted).

at trial, but to assess whether the plaintiff's complaint . . . is legally sufficient to state a claim for which relief may be granted."[47]

Finally, the Court notes that in evaluating Defendants' Motion to Dismiss, it may consider not only Plaintiff's Complaint itself, but also exhibits that are attached to the Complaint and documents that are incorporated into the Complaint by reference.[48]  While, generally speaking, only the complaint and its allegations are considered in ruling on a motion to dismiss, documents referred to in the complaint may be considered if they are "central to the plaintiff's claim" and their authenticity is undisputed.[49]  Accordingly, in this case, the Court may consider the National Agreement and Addendum that are referenced in, and attached to, the Complaint, as they are central to Plaintiff's claims and Defendants do not appear to dispute heir authenticity.

## V.     Discussion

### A.     Claim for Audit Asserted Against Miller Underground

The Court holds that the facts alleged in Plaintiff's Complaint state a plausible claim under which Plaintiff is entitled to assert a claim to obtain an audit of Miller Underground's payroll and wage records.  The Court's holding is based on the decisions rendered in *Santa Monica Culinary*

---

[47]*Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (internal quotations and citations omitted).

[48]*Id.* (citations omitted).

[49]*Id.* (citations omitted).

13

*Welfare Fund v. Miramar Hotel Corp.*[50] and *Plumbers and Steamfitters Local No. 150 Pension Fund v. Vertex Construction Co.*[51]

In the *Miramar* case, the trustees of a multiemployer benefits plan fund sued an employer, Miramar, to compel Miramar to submit to an audit of its records. The plan's fund was established pursuant to a written trust agreement, which authorized the fund to audit the records of contributing employers.[52] The union and Miramar were parties to a collective bargaining agreement that required Miramar to make contributions to the fund. The collective bargaining agreement was silent as to whether the fund had any right to audit the employers' contributions and it did not incorporate the trust agreement.[53]

Miramar argued that the fund did not have the legal authority to audit it because the collective bargaining agreement did not incorporate the trust agreement's audit provision.[54] The fund, on the other hand argued that ERISA gave the fund the right to audit Miramar's records even though the collective bargaining agreement did not expressly authorize an audit.[55]

The Ninth Circuit held that the fund had the right to conduct an audit of Miramar's records.[56] In so ruling, the court first noted that it need not decide whether ERSIA, in and of itself, conferred

---

[50]920 F.2d 1491 (9th Cir. 1990).

[51]932 F.2d 1443 (11th Cir. 1991).

[52]920 F.2d at 1492.

[53]*Id.*

[54]*Id.* at 1493.

[55]*Id.*

[56]*Id.* at 1494-95.

upon the fund the right to audit.[57]  Rather than rely solely on ERISA, the court looked to the Trust

Agreement and held that the right to audit flowed from the Trust Agreement and Miramar's

contributions to the fund.  This was the case, despite the fact that the collective bargaining

agreement was silent on the issue[58] and despite the fact that Miramar was not a signatory to the Trust

Agreement.[59]

The Court held as follows:

> While Miramar is not a signatory to the Trust Agreement, it is undisputed that it
> contributed to the Fund and intended its employees to receive the benefits from the
> Fund.  Miramar would not make contributions if it did not intend its employees to
> receive benefits from the Fund. . . . .  Miramar and its employees cannot receive the
> benefits of the Fund yet escape its attendant burdens, in this case, the provision of
> the Trust Agreement permitting the Trustees to audit an employer's books and
> records.[60]

The court concluded:  "It is clear that by making contributions to the Fund, Miramar intended

its employees to receive benefits from the Fund.  Once Miramar intended its employees to be

covered by the Fund, the Trust Agreement governing the Fund requires Miramar to be bound to its

terms."[61]  Thus, Miramar was required to submit to the audit.[62]

The Eleventh Circuit in *Vertex* reached a similar conclusion.  In *Vertex*, employee benefit

trust funds (the "funds") sued an employer, Vertex Construction Company ("Vertex") to compel an

---

[57]*Id*. at 1493.

[58]*Id*.

[59]*Id*. at 1493-94.

[60]*Id*. at 1494.

[61]*Id*.

[62]*Id*. at 1494-95.

audit of its payroll records pursuant to the funds' agreements and trust declarations and pursuant to a collective bargaining agreement entered into by Vertex and the union.[63] Vertex argued that it never agreed in the collective bargaining agreement—which was the only document it had signed––to permit an audit of the type sought by the funds.[64] The court agreed that the collective bargaining agreement did not give the funds or its trustees any power to audit Vertex.[65] The court did, however, find that the trust agreement gave the funds and their trustees the right to conduct audits of contributing employers.[66]

Despite the fact that the trust agreement was not incorporated into the collective bargaining agreement and despite the fact that Vertex had never signed it, the court held Vertex was bound by the trust agreement because it had made contributions to the fund.[67] In so ruling, the court observed that the collective bargaining agreement required Vertex to make contributions to the funds, and Vertex, in turn, should have understood that the funds were obligated to pay benefits to Vertex's employees.[68] In this way, Vertex had availed itself of the benefits of the funds.[69] The court held that Vertex could not "avail itself of the benefits of the Funds without also being subjected to the rules

---

[63]*Vertex*, 932 F.2d at 1447.

[64]*Id*. at 1448.

[65]*Id*. at 1448-49.

[66]*Id*. at 1450.

[67]*Id*. at 1450-51.

[68]*Id*. at 1451.

[69]*Id.*

that govern them."[70]  The court noted that to rule otherwise "would allow employers and unions to bargain away the rights and powers of fund trustees in agreements to which the trustees were not a party.  Such a situation ultimately would result in underfunded plans that could not pay appropriate benefits to their beneficiaries."[71]

While the *Vertex* and *Miramar* decisions were made in the context of summary judgment motions, they are nevertheless instructive here because they set forth the applicable law regarding the audits of ERISA benefit funds.  Their holdings are instructive as to what allegations will give rise to a cause of action seeking to compel an audit of an employer who is alleged to have made contributions to an ERISA benefit fund.  Thus, the Court finds them helpful in determining whether Plaintiff has stated an audit cause of action against Defendant Miller Underground.

Applying the legal analysis from *Vertex* and *Miramar*, the Court holds that the following allegations of Plaintiff's Complaint give rise to an audit claim against Miller Underground:  The National Agreement is an agreement between the Distribution Contractors Association and the United Association that applies to all gas distribution pipeline construction work with the United Association's jurisdiction.[72]  The National Agreement provides that the local union will set the wage rate paid and that it may also require the employer to make contributions into the Fund for the benefit of the local union's members.[73]  In addition, the National Agreement provides that the employer agrees to be bound by the Trust Agreement "the same as if it had itself signed" the Trust

---

[70]*Id.* (citing *Miramar*, 920 F2.d at 1494).

[71]*Id.*

[72]Compl. (doc. 1) ¶ 5.

[73]*Id.* ¶¶ 7- 8.

Agreement.[74]  Section 7.1 of the Trust Agreement provides that the employer must make available on demand the relevant payroll and personnel records of its employees for examination by the trustees in connection with their administration of the Trust.[75]  Also, the National Agreement notes the authority of the Trustees to have an independent accountant audit the payroll and wage records of the employer.[76]

The Complaint further alleges as follows:  Miller Underground hired members of Local 441 to perform gas distribution pipeline construction work.[77]  From January 2009 and continuing until October 2009, Miller Underground submitted checks to Local 441 for fringe benefits payments.[78] By making such payments to the Fund on behalf of its employees, Miller Underground "availed [itself] of the benefits of the Fund, and became subject to the Trust Agreement through [its] course of conduct."[79]  Plaintiff's Complaint asserts that it is therefore authorized to ask the Court to order Miller Underground to comply with Plaintiff's request for records necessary to perform the audit of payroll and wage records to the determine the accuracy of contributions made to the Fund.[80]

The Court finds that these allegations, when taken as true, are sufficient to state a cause of action under the law set forth in *Vertex* and *Miramar*.  That the Complaint fails to allege Miller

---

[74]*Id*. ¶ 9.

[75]*Id*. ¶ 19.

[76]*Id*. ¶ 9; *see also* Article XV, Sec. A of the National Agreement, Ex. A. to Compl. (doc. 2).

[77]Compl. (doc. 1) ¶ 10.

[78]*Id*. ¶ 15, 17.

[79]*Id*. ¶ 18.

[80]*Id.*, Wherefore Clause.

Underground actually signed either the National Agreement or Trust Agreement does not defeat Plaintiff's claim. The Court takes as true the allegation that Miller Underground made contributions to the Fund. If that is in fact the case, then it follows that Miller Underground availed itself of the benefits of the Fund and subjected itself to the rules that govern the Fund, including the Trust Agreement's requirement that employers submit their payroll and wage records for audits.

Defendants point out that no Tenth Circuit case has adopted this theory. While that is true, it appears that the Tenth Circuit has never been called upon to address this issue and, thus, there is no Tenth Circuit precedent on point. The Court finds the *Vertex* and *Miramar* decisions to be well reasoned and persuasive, and the Court sees no reason to deviate from them.

Furthermore, the Court finds *Vertex* and *Miramar* comport with well settled ERISA principles. ERISA requires that employee benefit plans such as the Plan in this case be established as written formal trusts and that all assets of the employee benefit plan be held in trust by one or more trustees.[81] Plaintiff in this case alleges that Section 7.1 of the Trust Agreement gives the Fund the right to conduct an audit of the employer's payroll and wage records. Pursuant to Section 404(a)(1)(D) of ERISA, the trustees of an employee benefit plan have a fiduciary duty to act "solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan," so long as those documents and instruments are consistent with ERISA.[82]

---

[81]29 U.S.C. §§ 1103, 1104. *See also Miramar*, 920 F.2d at 1493 (citing 29 U.S.C. § 1103).

[82]29 U.S.C. § 1104(a)(1)(D).

In *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport*,[83] the Supreme Court discussed the powers of trustees under trust agreements covered by ERISA. The Court recognized that "[o]ne of the fundamental common law duties of a trustee is to preserve and maintain trust assets, and this encompasses determining exactly what property forms the subject-matter of the trust and who are the beneficiaries."[84] The trustee is therefore "expected to use reasonable diligence to discover the location of trust property and to take control of it without unnecessary delay."[85] The Court also noted that "[t]he provisions of ERISA make clear that a benefit plan trustee is similarly subject to these responsibilities, not only as a result of the general fiduciary standards of loyalty and care, borrowed as they are from the common law, but also as a result of more specific trustee duties itemized in the Act."[86] These duties are consistent with the audit provisions of the Trust Agreement and National Agreement in this case.

In light of the above, the Court holds that Plaintiff's Complaint states a claim against Miller Underground under which Plaintiff is entitled to conduct an audit of Miller Underground's payroll and wage records. The Court need not address each and every one of Miller Underground's alternative arguments, as the Court finds that the Complaint sets forth an valid audit claim under this particular set of legal principles.

---

[83]472 U.S. 559 (1985).

[84]*Id.* at 572 (internal quotations and citation omitted).

[85]*Id.* (internal quotations and citation omitted).

[86]*Id.*

The Court does, however, find it necessary to address Miller Underground's argument that Plaintiff's claim is barred by the Kansas statute of frauds.[87]  As discussed above, Miller Underground argues in its reply that the only conduct of Miller Underground alleged in the Complaint is that it paid for the debt of Miller Construction, i.e., paid the benefit contributions for Miller Construction.  Because the Complaint fails to allege that Miller Underground's payment of the debt was pursuant to a writing that Miller Underground signed, Miller Underground argues that any claim based on the payment of that debt is barred by the statute of frauds.

Even assuming arguendo that a state statute of frauds has any applicability to a cause of action based on ERISA principles, Miller Underground's argument that the Kansas statute of frauds bars the audit claim is not properly considered in the context of this motion to dismiss.  Federal Rule of Civil Procedure 8(c) recognizes the statute of frauds as an affirmative defense that should be pled in a response.[88]  Rule 12(b)(6) motions, by contrast, are intended "to test the sufficiency of the allegations within the four corners of the complaint."[89]  Thus, it is well settled that a court may consider an affirmative defense when deciding a motion to dismiss *only* "[i]f the defense appears plainly on the face of the complaint itself."[90]

---

[87]While normally the Court does not address issues that are raised for the first time in a reply brief, the Court will address this issue here because the Court granted Plaintiff leave to file a sur-reply addressing the issue.  *See Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005) (court typically does not consider evidence or legal argument raised for the first time in a reply brief; however, court has the option to hear new evidence or legal argument if party is given the opportunity to respond in a sur-reply).

[88]*See* Fed. R. Civ. P. 8(c) (identifying statute of frauds in list of affirmative defenses).

[89]*Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) (quotations omitted).

[90]*Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965); *see also Xechem, Inc. v. Bristol Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Only when the plaintiff pleads itself out of
(continued...)

In this case, the statute of frauds affirmative defense does not clearly appear on the face of the Complaint. Thus, the statute is not a basis upon which this Court may dismiss the audit claim, or, for that matter, the collection claim, asserted against Miller Underground.

In summary, the Court holds that the allegations contained in Plaintiff's Complaint state a facially plausible claim to obtain an audit of Miller Underground's payroll and wage records. The Court therefore denies the Motion to Dismiss as to the audit claim asserted against Miller Underground.

**B.      Claim for Audit Asserted Against Miller Construction**

The Court also holds that the facts alleged in Plaintiff's Complaint state a plausible claim under which Plaintiff is entitled to assert a claim to obtain an audit of Miller Construction's payroll and wage records. Again, the Court's holding is based on the *Miramar* and *Vertex* decisions discussed above. Although the Complaint does not allege that Miller Construction was the entity that actually issued the checks for the benefit payments, this does not defeat Plaintiff's claim against Miller Construction. The Complaint does allege that Miller Construction hired members of Local 441 to perform gas distribution pipeline construction work,[91] and that Miller Construction submitted the Fringe Benefit Remittance Reports which accompanied the checks that were written by Miller

---

[90](...continued)
court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)."); 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004) ("As the case law makes clear, the complaint is . . . subject to dismissal under Rule 12(b)(6) when its allegations indicate the existence of an affirmative defense that will bar the award of any remedy; but for this to occur, the applicability of the defense has to be clearly indicated and must appear on the face of the pleading . . . ." For example, a defendant may assert a statute of limitations defense in a Rule 12(b)(6) motion to dismiss "when the dates given in the complaint make clear that the right sued upon has been extinguished." *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980).

[91]Compl. (doc. 1) ¶ 10.

Underground.[92]  It further alleges that those Fringe Benefit Remittance Reports "detailed hours worked by members of Local 441, and calculated the contributions for the Fund, totaling $19,386.65" for the relevant time period.[93]  Furthermore, the Complaint alleges that Charles James, acting as an agent of Miller Construction, orally represented to Agents of Local 441 that Miller Construction was a signatory to the National Agreement, which contained the audit provision and which incorporated the Trust Agreement, which in turn also contained an audit provision.[94]

Furthermore, the Complaint alleges that in addition to orally representing that Miller Construction had signed the National Agreement, Charlie James negotiated with the agents of Local 441 and "establish[ed] the applicable hourly wages and benefit contributions for covered workers in the area, pursuant to the National Agreement."[95]  The Addendum, which is Exhibit B to the Complaint, reveals that it was signed by Charlie James as "Managing Member Miller Paving and Construction LLC."[96]  The Addendum "established . . . that certain hourly contributions would be made to the Fund, established pursuant to the . . . Trust Agreement."[97]  Although the Addendum references the "National Gas Distribution Agreement," the parties "intended the agreement to reference the National Agreement."[98]

---

[92]*Id.* ¶ 15, 17.

[93]*Id.* ¶ 16.

[94]*Id.* ¶¶ 9, 11 &19.

[95]*Id.* ¶ 11.

[96]*Id.*; *see also* Addendum, Ex. B to Compl. (doc. 2).

[97]Compl. (doc. 1) ¶ 14.

[98]*Id.* ¶ 12; *see also* Addendum, Ex. B to Compl. (doc. 2).

Taking into consideration all of these well pled factual allegations, and taking them as true, the Court finds that Plaintiff has sufficiently alleged that Miller Construction, just like Miller Underground, availed itself of the benefits of the Fund and became subject to the audit provisions of the General Agreement and Trust Agreement. From these factual allegations, the Court can logically infer that Miller Construction intended that its employees receive the benefits from the Fund. Miller Construction would not have submitted Benefit Remittance Reports detailing the hours worked and calculating contributions to the Fund exceeding $19,000 had it not intended its employees to receive benefits from the Fund. Miller Construction and its employees cannot receive the benefits of the Fund yet escape its attendant burdens, i.e., the provisions of the General Agreement and Trust Agreement permitting the Trustees to audit an employer' payroll and wage records.

Under the ERISA principles enunciated in *Miramar* and *Vertex* decisions, these allegations are sufficient to allow Plaintiff to pursue its claim against Miller Construction for an audit. In short, the Court holds that Plaintiff has framed a complaint with enough factual matter, that when taken as true, suggests that it is entitled to relief against Miller Construction. The Court therefore declines to dismiss the audit claim asserted against Miller Construction.

## C. Remaining Collection Claims Against Miller Underground and Miller Construction

The remaining claims for relief asserted against Defendants in the Complaint are the collection claims, i.e., the request that the Court "order Defendants to comply with the findings of the resulting audit, including payment of any delinquent contributions that are determined by the

audit to have been retained by the Defendants and associated interest or liquidated damages as provided by the Trust agreement."[99]

Defendants argue that these collection claims should be dismissed because Plaintiff is not entitled to an audit. Defendants assert no independent basis for dismissing the collection claims. Because the Court declines to dismiss the audit claims, it also declines to dismiss these collection claims.

## VI. Conclusion

For the reasons set forth above, the Court holds that the allegations of Plaintiff's Complaint are sufficient to withstand Defendants' Rule 12(b)(6) Motion to Dismiss. Defendants' motion is therefore denied.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Plaintiff's Complaint (doc. 6) is denied.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 27th day of July 2010.

s/ David J. Waxse
David J. Waxse
U. S. Magistrate Judge

cc:     All counsel and pro se parties

---

[99]Compl. (doc. 1), Wherefore Clause.